How are you? Deputy Attorney General Mateo Munoz on behalf of the appellant, Defendant Shrewy, Director of the Department of Health Services. We're here on the appeals, actually two appeals from the district court on the denial of the 60, defendant's 60B motion. 60B motion. Rarely one appeals. We understand that they are very difficult and very complicated in nature. The 60B appeal, discretionary in nature. No, actually, that's sort of easy. Usually you get denied on the standard review, and I am a little surprised that you all appealed. Well, Your Honor, I Given the immensely difficult burden you have in overcoming a denial of a 60B motion, four years, five years after the judgment was entered? And given sort of the district court's wide discretion. I understand, Your Honor. And all that. The I'm a little baffled to see you here. The 60B motion really has several component parts. I must have given you a real good talking to, a pep talk before you came down. The 60B motion has several component parts. The 60B allows for relief from prospective enforcement of a judgment or an injunction where there's been a change in the facts. And the change in the facts in this particular case is the defendant has completely and fully complied with the amended judgment that was issued, notwithstanding that the objections with regard to the imposition of participation goals or performance requirements had been imposed by the district court. So the 60B motion is appropriate when a defendant has fully complied with the injunction. That evidence came in on the motion. It's the proper time to make such a motion. At the time that the motion was made, there was also significant change in Federal jurisprudence with regard to the private right of action. This Court last year issued the Sanchez decision, which directly has some bearing on the amended judgment, which Very little bearing. The big case was Gonzaga, wasn't it? That's correct. And that was decided before you guys decided to put your heads in the airs. No, actually, the Gonzaga happened after the entry of judgment. Judgment was originally entered in 2001. Gonzaga did not issue until nearly a year later. Okay. In any way that's all these years. And actually, there was the And there's nothing new in Sanchez that wasn't pretty well said in Gonzaga, right? Well, Sanchez, I think, added a little bit more specificity with regard to the mere can the granting of a benefit does not necessitate or mean that there is a, that the Congress conferred a private right of action for enforcement of that particular statute. This is all very interesting, but you agree. I mean, this is not simply a judgment. This is a stipulated judgment. This is something where you got something in exchange for having the other side give up their claims. And one of the things you could have argued is, well, if there was a private right on these implementation provisions, you could have said that. You could have argued. You could have appealed it. You chose not to. Instead, you actually consented. Actually. Actually, there was a consent on the liability of the claim, underlying claim. There was also some consent with regard to, some agreement with regard to the scope of the permanent injunction. And some of what you want to take back now, much of what you want to take back, you consented to. That's not correct, Your Honor. The primary issue, I think, which is really in dispute. You wish to take none of it back that you consented to? Pardon me? You wish to take none of it back that you consented to? The last argument that we have with regard to fully complying takes all of the bundle of the orders which the Court had issued, including the January 2004 order, which imposed a performance participation goal, de facto, if you will, sub salientia, if you will, but included that. And taking those orders into account, the defendant had proffered evidence indicating that it is fully complied with those, with the order, the amended judgment, as well as the permanent, all of the terms of the permanent injunction, including those to which it had, that it agreed. There were some aspects of the permanent injunction which were disputed and which were imposed by the Court. In 2004, the Court modified the judgment and ordered the implementation. Did you hear my question? Pardon me? Did you hear my question? You answered a question of mine, and I've been waiting for the answer. Are you trying to take back anything to which you stipulated? No. No. So whatever it is you agreed to and stipulated is not on the table before us now. That's correct. I would draw the Court's attention to the issue of access. Paragraphs 7 and 21 were not stipulated to. They were complied with in terms of paragraph 7 and 21 address the issue of whether there is sufficient access as measured by the sufficiency of the number of providers, clinical providers for this particular service, therapeutic behavioral service. The evidence and plaintiffs conceded that there were a sufficient number of providers. When the Court denied the 60B motion, it did not find, to the contrary, that there were insufficient number of providers. Rather, it said, well, access had not increased over the 2004 level. The point being is that the Department has complied with the access provision as it's measured by the number of providers. That is not in dispute. However, there's some other access standard which is being applied to the Department in terms of complying with the judgment. That other access, really, it goes to the issue of Sanchez, that the Beneficiaries do not have a private right of action to enforce access to Medicaid services. That is Sanchez. That squarely belongs, is being applied to the Department, and it is a matter that this Court has addressed by Sanchez. The additional kinds of modifications. I don't understand what you're just saying. This is something to which you didn't agree to, that the Court imposed? That's correct. The general right of access was not agreed to. The Court is enforcing a general right of access when it says, well, you have to increase access over the 2004 levels. The 2004 order really talked in terms of. Where is the agreement? The stipulations, if you will, with regard to the permanent injunction are contained in the Court's order, in the Court's judgment itself in the published decision. It tracks through all of those, all the language to which the Department conceded in terms of agreeing to in terms of the permanent injunction. Then the second half of the decision of the judgment then gets into a disputed issue of contentions raised by the plaintiffs, positions taken by the defendant, and the Court ruling saying one way or the other, we're going to add this to the permanent injunction or not. Paragraphs 7 and 21, which are governed access, are measured by way of the number of providers. Again, plaintiffs have agreed that there's not an insufficient number of providers and, in essence, the Department has complied with creating an administrative scheme, matrix, for the provision and compensation of this benefit, and there are sufficient numbers of providers. The defendant argues that then paragraphs, with regard to the access provisions, which ---- Roberts. Okay. I had understood you to say that there were two grounds, that there was a change in the facts and there was a change in the law. That's correct.  But in response to Judge Kaczynski's question as to whether any of this ---- of these changes in facts or changes in laws affects things as to which you stipulated, your answer was no, it does not. It all affects things that were imposed upon you, not things that you agreed to. Yes, I believe that's correct. Okay. Those ---- And that would apply even to the change in the laws? With regard to the change in the law, we take a look at the orders. The change in law occurred with Gonzaga, with regard to the change in ---- Which occurred within one year of your agreement here. It occurred in 2000. You waited and sat on your hands for a couple of years before you brought that back in and claimed that Gonzaga changed the landscape here. That's correct. The court ---- But it didn't change the landscape as to anything as to which you stipulated. I thought you stipulated to a judgment. No. Actually, they ---- it's kind of a mixed bag, Your Honor. There was a concession on liability on the specific statutory claims that plaintiffs have raised. That was a claim based on 843, 1396A ---- Okay. 843 ---- What did Gonzaga change that didn't go to your concession of liability? How could you come in asking now for a change in the injunction if there's been no change in your ---- in what you stipulated to, which was a concession of liability? At the time, they can ---- I understood your argument to be that there isn't an implied right of action under this provision of the code. That's correct. And that you didn't realize that until you saw Gonzaga and you didn't ---- and our decision in Sanchez. That's correct. How could that not go to the question of your liability? Well, I ---- How could the question of an implied right of action not go to the question of your liability? In that sense, you're correct, Your Honor. It does cut off liability with regard to the enforcement. What other sense is there? Pardon me? What other sense is there? It does go to ---- You make it sound so narrow, saying in that sense. I can't figure out what other sense there might be. Because ---- You mean if you had seen Gonzaga and Sanchez in the first place that you would not have stipulated to liability? I'm struggling here because there was ---- at the time that this case came down, the Department was planning to provide these benefits. Okay. So it's kind of putting that side, that issue aside. We're looking at the prospective enforcement ---- So you're stipulating to these matters as a ---- not as a matter of law, but as a matter of policy? In part, yes. As a matter of law, there was a concession that ---- Then why isn't this just simply a matter of contract, and why should we just simply enforce the contract? Why do you get out of a contract? It was simply a matter of policy. There's no law involved here. Why are we bothering? Because as a matter of law, it's obligated that if it's a Federal benefit, it needs to be provided. The question is whether or not there's an enforceable right. Sanchez, with regard to the issues of access, cuts off those rights. It clearly has changed the landscape. There's been a substantial change in that law. With regard to ---- How might that affect your argument with respect to A43 and perhaps all three subsections? But aren't you pretty well stuck so far as the argument is concerned on A10A? Wasn't that pretty well decided by Watson v. Weeks? With regard to A43, the claim is based on A43C. If you look at A43C, there's no mention whatsoever of a right being conferred on any individual. In fact, the word individual is not even mentioned or cited in A43C, nor is it cited in A43B. Arguably, in A43A, there's language providing for informing all persons in the State who are under the age of 21 and so forth. So at least there's an argument. There's an argument there, but with regard to the specific claims ---- But it's an argument you chose not to make by scuttling the appeal. You could have appealed. There was an order by the district court. These arguments were available to you at the time. You chose not to make them. You chose to accept instead the interpretation of the statute as providing a ---- There was no motion to dismiss, right? That's correct. There was no motion to dismiss saying there's no private right of action. There was an order from the district court, and instead of appealing it, you accepted it. At the point of time of the entry of judgment, Gonzaga had not been entered. With regard to the issue of whether or not a ---- But let me make sure I understand this correctly. If you had persisted in your appeal at some time during the life of the case before the case was decided, Gonzaga would have come down, and you then had a glorious victory, perhaps. Right? I think we're speculating whether or not that that would have been the point. The appeal which was lodged from the original judgment was focused purely on the issue of the court's granting of compensatory TBS. And that was where the focus lied. Further, I would call the Court's attention to the matter of Agostini. In Agostini, the Court ruled that the procedural rules governing the finality of judgment is not compromised or violated by maintaining or bringing a 6dB motion where there's been a substantial change in the law which undercuts and erodes the legal principles upon which the amended judgment or an injunction has been based. That is precisely where we sit today. Even where the judgment is stipulated to? It's in the nature of a stipulation that you give up the possibility of a better result in order to secure certainty and to avoid something much worse. You got concessions. The stipulation resulted in modification of a number of paragraphs of the district court's injunction. And that's what you got for it. And it turns out if Gonzaga had come out the other way later on, you would have felt pretty good. You would have felt like you got something for nothing. But that's just the nature of the bargain. Let's get back to Judge Whitey's question. Why shouldn't you just be held to the terms of your contract? Because the contract in essence was modified and substantially changed by the Court's order in January 2004. In 2004, the Court ---- Did you appeal that? Is this an appeal from that order? It is not an appeal from that order. Why didn't you appeal that order? Because the law had not yet been coalesced sufficiently to undercut those legal principles. But Gonzaga had come out. He'd been out on the books for two years. Yes, but with regard to the ---- Well, what kind of excuse is that anyway? We didn't have the people appeal all the time arguing for extensions of existing law. That's how by the time the Gonzaga case was appealed, Gonzaga didn't exist either. Somebody had to have the courage and imagination to bring an appeal when there is no precedent. If that were the case, we'd never have any precedence at all. Because when we say there's nothing to ---- there's no authority out there for us to rely on. So I don't understand at all. Why couldn't you appeal in 2004, made precise of this argument, and along the way, you would have ---- I would like to think, Your Honor, that there was some goodwill on behalf of the State in order to implement those court orders, in order to demonstrate some sincere delivery of these particular benefits. I think so. In January 2000 ---- Highly commendable. In 2004 ---- But you're stuck with the consequences. I mean, the goodwill. I mean, if you want to sort of have Bon Ami and goodwill and all that, you're stuck with that. I mean, that's your remedy. However ---- Maybe you talk to a polling council. Maybe if you buy her lunch, she'll help you out. She'll be nice to you. But that's what you get for Bon Ami if you want to ---- You could have appealed in 2004, right? We could have appealed. And Augustini says that the fact that you did not appeal does not bar ---- And where there has been a substantial change in that law does not bar the 60B. Has there been a substantial bar since 2004? Yes, Your Honor. In 2004 and in 2005, the matter of S.D. from the Fifth Circuit and the matter of Westside's Mothers in the Sixth Circuit conclusively ---- That's not a change in the law. That's not a change in our law. It's not a change in the Supreme Court's law. Yes. It is a change in the law with governing the enforceability of participation goals and performance standards. Those clearly, at that point in time, as those decisions came down, indicated that the court was without authority, that there was no violation of law, there was no protectable interest, if you will, with regard to participation goals and performance requirements. When the court in the district court in 2004 imposed those obligations, it changed the amended judgment. Those were matters to which the defendant did not stipulate. These were additional orders that were imposed upon and for which those orders were in violation of fundamental rules of equity. They are not tailored towards anything to which the Department had agreed to in terms of correcting the violations of law. It went far beyond the violations of law to which the Department had conceded. I would like to reserve the remaining 30 seconds for my rebuttal, Your Honor. Thanks. Good morning, Your Honor. Melinda Bird for the plaintiffs. Anything in your brief that didn't address anything you heard here that wasn't adequately addressed in your brief? There are a couple points that I wish we had made, and I've found them preparing for this argument. And I'd like to discuss them today. But first, I want to just review the nature of the stipulations in this case. There were actually three. The first was in 1999. It's found in tab two of the supplemental excerpts of record at page nine. And in that stipulation, the State did, in fact, agree precisely to assure access to the medically necessary mental health benefits at issue here. That was the exact language. We shall ensure access to this benefit. In 2004, there were two additional stipulations, and I think the timing on them is important. The first was a stipulation in April of 2004 that was the result of extended negotiations between the parties. And I've done this case long enough. I've outlived several attorney generals or succeeded several attorney generals. I remember those negotiations well. We made a number of concessions, we as plaintiffs did. We gave up some things that I think we could have won in an appeal that was pending before this Court then. The State did appeal from the 2001 judgment. They agreed to dismiss that appeal in exchange for these concessions. We made a bargain. As part of the bargain, the State stipulated to entry of the entire amended judgment. And the district court's order and their motion to vacate attacks not the 2001 judgment but the 2004 amended judgment. So 2004, it's actually April of 2004, that's the date at which we have to, from which we measure everything. There was a third stipulation in July of 2004 in which the State agreed to develop a corrective action plan to redress the noncompliance that the Court had earlier found. As Judge Bybee pointed out, in January of 2004, the end of January, the Court found the State out of compliance. They then stipulated to a whole process to bring themselves into compliance. So those were the three stipulations. And those were found at tab 6, supplemental excerpts of record at 78, and tab 9, supplemental excerpts of record at 107. Now let's look at the timing here. Gonzaga, as we've said earlier, was 2002. To prevail, the State would have you believe that the Sanchez decision, which Judge O'Scanlan authored for this Court, radically changed Medicaid law and the enforceability of statutes under 1983. I would never presume to speak for Judge O'Scanlan as to his judicial activism, but my reading of Sanchez is that it applied the Supreme Court's holdings in Gonzaga and Blessing. It did not change the law. Kennedy. I think you probably had an innuendo from something I said earlier to Mr. Munoz. That was the point. I'm still waiting for the new stuff. You've now spent almost four minutes. I'm sorry. I'm looking for time for enlightenment. Just about to get it, Your Honor. In essence, though, I think that... You would have been better if you had done it four minutes ago. I had to set the frame. I had to set the frame. I had to make my little line about Judge O'Scanlan's activism. Why? If we... Oh, I don't mind. I think it's just fine. Thank you. Thank you. You did it four minutes ago. You have three and a half minutes to do it. But in essence, the State is saying maybe it was Gonzaga that changed the law, but we didn't know that until Sanchez. Sanchez is when we learned that Gonzaga changed the law. Were you here listening? I understand. Were you here listening? I think it's very important to look at the problem with the State's picture is the lower court's decision, Judge Wilkin's decision in Sanchez. In 2003, the Attorney General's Office filed a motion based on Gonzaga asserting that the plaintiffs in Sanchez had no cause of action. And on January 5th, 2004, while the State's appeal in Emily Q was pending before this Court, Judge Wilkin issued the lower court decision in Sanchez finding, based on Gonzaga, that there was no private right of action. So clearly the Attorney General's Office knew in 2003 and early 2004 that Gonzaga changed the law because they just won a case on that. They won a decision on that. And yet, despite that knowledge, which it's the Attorney General's Office, so it's, you know, they're a firm in effect. Despite that knowledge, they did not appeal the order finding them out of compliance in late January, and they said this. The district court did not deny the motion based on untimeliness. So I don't know that this helps you any here, because I was not part of the district court's exercise of discretion. Your Honor, it actually is not an issue of timeliness. It's an issue of RUFO. Under RUFO, there must be RUFO v. Inmates of Suffolk County Jail. Under RUFO, there must be a change in the law after the judgment. And if Sanchez was not the change in the law after the amended judgment in April of 2004, then they haven't met the RUFO test. It's not a question of timeliness. Why isn't Gonzaga after the judgment? Because the judgment to which the motion to vacate was addressed was 2004 judgment. It was not the 2001 judgment. And the papers are very clear on that, and the motion is very clear on that. Counsel, I've got a question that raises the private right of action. It would appear that Watson v. Weeks probably determined the 810A issue, or at least it's persuasive. It's not necessarily binding, but it's out there. On the other hand, I'm not sure about whether A43, whether it's A, B, or C, creates a private right of action. So I have a hypothetical question for you. If we are persuaded that 810A does give a private right of action, but that 43, whether it's A, B, or C, does not, where does that leave us in this case? I think that has no impact on the outcome in this case for several reasons. First, the complaint at this stage is immaterial. Under traditional principles of bar and merger, all of the claims, all of the matters asserted in the complaint have been merged into the judgment. And the judgment clearly relies on not just, relies on all four provisions of the EPSD, all four EPSDT provisions, including all three provisions of AA43. So it isn't, we aren't limited to what was pled in the complaint. And if it were otherwise, why would any party ever file a 12B6 motion? It can, if you could wait until after the judgment and then go back and pick at the complaint when it's too late to amend it. I think they do it because they want to get through the case early. They save themselves the trial, you know, the summary judgment, the depositions, the interrogatories, the motions to compel. You know those things, right? It was one of those rhetorical questions that didn't make any sense whatsoever. It's true, Your Honor. But I think it is true that the judgment is what we have to look at now, not the complaint, because the claims in the ---- Suppose the judgment is premised on a false assumption as to the existence in Federal court of a private right of action to enforce this particular provision. What do we do with that? And I'll assume, for purposes of the Court's hypothetical, that it is premised in part on a false assumption that AA43 is enforceable when, in fact, perhaps it is not enforceable. My position is that will have no impact on your ---- would not lead you to reverse the district court's denial of the motion to vacate. AA10A is the driving engine in the Medicaid Act. And the provisions about which the parties now have a dispute do turn on whether children get the medically necessary services that they need in a timely fashion without delay. All of the informing issues that were addressed at an early stage of this case, the States completely complied with those. I have no concern about that. I have a concern ---- In effect, AA43 is out of this case in terms of the central power of the district court to enjoin conduct in this area. That's exactly right, Your Honor. The prospective application is all driven by AA10A and not by A43. Thank you. I'd like to turn for a second to the States' third argument, which had to do with their assertion that there's a change in the facts and that they're now fully in compliance. Here they have a very difficult burden to carry to show that District Judge Matz's finding that there was no change in the facts was clearly erroneous. And I have to say that in preparing, and again, this is an answer to Judge Kaczynski's question about what I wish I'd added. I wish I had added Judge O'Scanlan's characterization of this standard in Hayes v. Woodford, where he said that to be clearly erroneous, a decision must strike us as wrong with the force of a five-week-old unrefrigerated dead fish. And I submit that Judge Matz's order does not have that pungent aroma. The Supreme Court raised the case of four-week fish. No fish at all. I think it's fresh as a daisy. In Anderson v. City of Bessemer City, which we've cited in our papers, the high court explained that where there's two permissible views of the evidence, the fact that the fact finder's choice cannot be clearly erroneous, no matter what the viewing court may have thought. So even if you would agree with the State that there was evidence to show that they'd come into compliance, there was plenty of evidence to show that they were not. That Judge Matz relied on the evidence to show there was – that indicated there was no change, no improvement, in fact, some decline. He had – there was plenty of evidence in the record viewed as a whole to support his conclusion of no change. And I've only seen the Attorney General argue, we do have evidence, we do have evidence. I'll assume for purposes of this argument they're right, that – but Judge Matz's order has to be clearly erroneous, and in fact it is not. Have you covered evidentiary hearing? I'm sorry, Your Honor? You hold an evidentiary hearing? I still do. You hold an evidentiary hearing. He did not hold an evidentiary hearing. How do you apply a clear erroneous? That is a standard that applies when the judge exercises fact-finding, when a court exercises fact-finding, which requires live witnesses, cross-examination, opportunity to rebut, and those things. You have the wrong standard of review. Your Honor, I guess I'd have to ask Lee to look at that question further, and perhaps the Court would keep it open. Your Honor, every case I have looked at indicates that in a motion to vacate, the Court's factual findings are reviewed for clear error. I guess here's the question. I've never found a case that's done this. Here's the question. How can the Court make factual findings? I mean, let's say there really are disputed questions of fact. If there are no disputed questions of fact, then we're back to the summary judgment standard, and there's no disputed questions of fact, and then you don't have any fact-finding. But let's say there really are disputes. The State says X, and the District Court says I find this. Clear error of the virus, isn't it? How does the District Court know without cross-examination and sweaty palms and all that stuff? Your Honor, I think it goes back to the burden in a motion to vacate, that the burdens on the moving parties, they are the ones. Yeah, we'd like to meet our burden. What we'd like to do is put some witnesses on the stand to help us meet our burden. You can't just cut it off by saying A, no. I'm not going to listen to it. That's not fact-finding. That's sort of... Your Honor, I'll say this. It's more like telekinesis. This was an unusual motion to vacate in that the State called only the State presented evidence from only one witness, a single witness, in support of their argument that they were in compliance. And we took that witness's deposition before we filed our reply brief. Her deposition testimony was before the District Court, and we've included a pretty hefty hunk of it in the excerpts of record. And so the State's single witness, Rita McCabe, was tested under direct and cross-examination, and all that was presented to the District Court. We presented dozens of declarations from medical experts, families, children, clinicians. The State didn't seek to take the depositions of any of our experts. They didn't really tear them apart at all. That was the record before the District Court. It was pretty extensive. And if you look at that record as a whole, which is the standard for clear error, the District Court's decision that there was no significant, not just any change in the facts, but a significant change in the facts, I think is fully justified. Kennedy. You have maybe four minutes. Can you find something from one of my or Judge Vivey's opinions that you can pull out? I mean, I feel sort of left out. Your Honor, I couldn't find a thing from Judge Vivey, but I did find a couple. I have 439 opinions out there. You know, she would have said something. Your Honor, in the Feister case, I did find one in the Feister case. Feister? Feister. Yes. A long time ago. I don't remember. It was 1986, Feister v. Turner. Judge Vivey was still in high school. In that case, you made the point, which I think is very important, actually, that on a motion to vacate, the merits of the underlying judgment are not before the reviewing court, that you can't go back in and reweigh. I'm glad you reminded me of that. I have forgotten. It was every minute. Your Honor, I have nothing further unless the Court has questions. Thank you. Thank you. You have about half a minute for rebuttal. We'll round it down to nothing. No, we'll have a couple of minutes. Thank you, Your Honor. Counsel spoke of the stipulations that were agreed to, and she made reference to the January 2004 order, which required the Department to come up with a plan of action. That was an order that was issued by the Court, finding that there was low utilization and directing the Department to come up with a plan of correction to address that. That is not a stipulation. That was a response to an order, a compliance with an order, to tender a plan of action in order to increase TBS utilization. TBS utilization, as I indicated before, was a change in the agreement or the contract, if you would, in terms of stipulation. That was something that the State did not agree to. It's outside of the nature of the violation. It broadens the scope of the injunction beyond the legal issues and issues that underlie the complaint and the judgment. With regard to A-10-A, certainly the State has recognized that this Court in Watson has found a private right of action in A-10-A. The question is really, with regard to this case, is what is the scope of that right of action? It's a matter of the appellate courts are divided on the question of whether or not A-10-A confers a right of action for the provision of services, which counsel has recognized that that's what this case is about. It's the provision of services as opposed to the payment or the compensation for Medicaid benefits. The courts of appeal are divided on that question. So while this Court has issued that Watson decision recognizing that private right of action, the scope of that right of action really still is at issue. With regard to the evidence underlying the Court's decision to find that the department was not in full compliance, the sole evidence that the Court looked to was the special master's report. And we've asserted that there is a that consideration of that evidence constitutes prejudicial constitutional evidentiary error. It should not have been considered. The defendant objected to hearing on the merits when that, in October of 2004. Kennedy. Are you getting into matters that go beyond what opposing counsel raised in her? Normally, rebuttal deals with those issues. You're not getting into matters you didn't address in your original argument. Well, it goes to the ---- You're far in excess of your minute. If I might, it goes beyond, it addresses the issue of other evidence. The evidence that the Court considered was prejudicial in nature, and the other evidence that was in the record actually supported the evidence that the department had come in, had introduced, that it was in full compliance. And with that, I'll submit it. Thank you, Your Honor. The case is arguably submitted. We are adjourned.
judges: Kozinski, O'scannlain, Bybee